**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **A-1 MOTORS AND LOGISTICS, L.L.C.** | |
| **PLAINTIFF,** | |
| **V.** | |
| **KARA TEMPLETON, THE DEPUTY SECRETARY FOR DRIVER & VEHICLE SERVICES** | **NO.** |
| **-AND-** | |
| **2700 BRUNSWICK PIKE AUTO, L.L.C. A/K/A ROUTE 1 CHRYSLER DODGE JEEP RAM OF LAWRENCEVILLE** | **COMPLAINT** |
| **-AND-** | |
| **JOHN DOE** | |
| **-AND-** | |
| **CORPORATION1** | |
| **DEFENDANTS** | |

**COMPLAINT WITH JURY DEMAND**

This suit challenges the validity of Pennsylvania Statute 67 Pa. Code § 175.220 and Defendant's actions, under color of state law, that resulted in an unconstitutional taking of the Plaintiff's property without just compensation, in violation of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment's Due Process Clause. Plaintiff seeks declaratory and injunctive relief to remedy the unlawful deprivation of property rights by the Pennsylvania Department of Transportation and Templeton. Plaintiff purchased a vehicle from Route 1 Chrysler Dodge Jeep Ram of Lawrenceville and was unable to register it or obtain an exemption from registration due to Pennsylvania Department of

Transportation regulations requiring a proof of ownership to be presented and submitted for enhanced vehicle inspection under the Defendant's policies and regulations. Plaintiff also seeks compensatory and punitive damages against Defendant Route 1 Chrysler Dodge Jeep Ram of Lawrenceville because it failed to comply with the contract, register the vehicle, provide Plaintiff with a proof of ownership and registration, forward PA Sales tax and other misgivings.

## **PARTIES**

1.      Plaintiff, A-1 Motors and Logistics L.L.C., d/b/a Shomron Farm (Shomron), a resident of Coopersburg, PA, at all relevant times owned and possessed certain property and/or privileges recognized by federal and state law.

2.      Defendant Kara Templeton, the Deputy Secretary for Driver & Vehicle Services ("Templeton" or "PennDOT") is sued in her official capacity. Templeton is in charge of Pennsylvania Department of Transportation's Drivers' and Vehicles' services and implementing policies and regulations, including those that resulted in the deprivation of the property at issue.

3.      Defendant 2700 Brunswick Pike Auto, L.L.C. a/k/a Route 1 Chrysler Dodge Jeep Ram of Lawrenceville ("Rt1") is a licensed new car dealership selling Chrysler and RAM vehicles.

4.      Defendant John Doe is an individual directly involved in the transaction of sale/purchase of certain vehicle.

5.      Defendant Corporation1 is a business entity authorized and licensed by PennDOT to conduct vehicle inspections in the Commonwealth of Pennsylvania.

## **JURISDICTION**

6.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), as this case arises under the Constitution and laws of the United States.

7.      Defendant Rt1 is subject to the personal jurisdiction of this Court because it has purposefully availed itself of the privilege of conducting business within the Commonwealth of Pennsylvania and has established substantial, continuous, and systematic contacts with the state. Rt1 regularly markets, sells, and delivers vehicles to Pennsylvania residents, collects taxes and registration fees for submission to Pennsylvania authorities, and advertises its services to consumers in Pennsylvania. In this case, Rt1 directly solicited business from Plaintiff, a Pennsylvania resident; negotiated and executed the vehicle sale with knowledge that the vehicle would be titled, registered, and used in Pennsylvania; collected fees designated for Pennsylvania registration and taxation; and arranged for delivery of the vehicle to Plaintiff's farm in Coopersburg, Pennsylvania. By engaging in these activities, Rt1 purposefully directed its commercial conduct toward Pennsylvania and derived substantial revenue from such contacts. Exercising jurisdiction over Rt1 therefore comports with the Pennsylvania long-arm statute (42 Pa.C.S.A. § 5322(a)(1), (a)(4)) and satisfies the constitutional requirements of due process under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

## VENUE

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the events giving rise to the claim occurred within this District and the property in question is also located in this district. The Defendant is an official of the Commonwealth of Pennsylvania.

## FACTS

9.      On or about July 31, 2025, Plaintiff Shomron contacted Rt1 to purchase a 2023 RAM 3500 cabin chassis truck, VIN 3C7WRTCL6PG650841, to be titled and registered in Pennsylvania as a farm vehicle. A copy of purchase agreement is attached and incorporated herein as **Exhibit "A"**.

10.      During the initial phone negotiation with one of Rt1's managers, the parties agreed on a total purchase price of $54,999, "out of the door," including all registration fees, sales tax, documentation fees, and other costs.

11.      Plaintiff explained that the vehicle would be used for agricultural purposes, to tow a gooseneck trailer and should be farm-registered with a gross vehicle weight of 26,000 lbs.

12.      Rt1's sales representative, Steve Salmanowitz, confirmed these terms in a handwritten note dated July 31, 2025, and solicited a credit application.

13.      On August 1, 2025, Salmanowitz informed Plaintiff that he had obtained financing approval through Chrysler Capital and asked whether Plaintiff wished to proceed.

14.      Salmanowitz had represented that Rt1 recently delivered a vehicle to Scranton, PA, and would deliver Plaintiff's truck to Coopersburg, PA free of charge.

15.      Salmanowitz also represented that Rt1 is familiar with registration process in PA and would collect registration fees and other fees on behalf of the Commonwealth of Pennsylvania and would charge Plaintiff fees for performing registration and submitting documentation.

16.      Plaintiff accepted the offer, executed the Purchase Agreement ("Contract") and provided a copy of his driver's license and proof of insurance.

17.    Plaintiff specifically objected to signing the arbitration clause of Contract.

18.    Plaintiff did not sign any warranty disclaimers of Contract.

19.    Shortly thereafter, Rt1 requested additional documentation to register the vehicle as a farm truck in Pennsylvania, including a completed weight-designation form and a copy of Plaintiff's IRS Schedule F (Farm Income).

20.    Plaintiff promptly supplied these materials, and Salmanowitz confirmed that "everything was good" and no further information was required.

21.    On August 8, 2025, Rt1 delivered the truck to Plaintiff's farm in Coopersburg, Pennsylvania, with temporary New Jersey tags valid for thirty (30) days.

22.    After delivery, Plaintiff repeatedly sought confirmation that permanent Pennsylvania title, registration, and plates were being processed.

23.    On August 25, 2025, Plaintiff texted Salmanowitz for a status update.

24.    Salmanowitz replied: "I will check, it usually takes 25 days."

25.    Plaintiff followed up between September 3 and September 25, 2025, receiving only identical "I will check" responses.

26.    By September 25, 2025, the temporary tag has expired.

27.    On September 26, 2025, Plaintiff reached out to Rt. 1 sales manager, Sal Shetty ("Sal"), who claimed that the dealership required additional documents, including "Application for Correction of Vehicle Data" (Form MV-45) and a copy of the back of Plaintiff's driver's license to adjust the registered gross weight to 26,000 lbs. Plaintiff immediately provided both documents.

28.    Days later, Sal asserted that Rt1 still needed a "second-stage" Manufacturer's Certificate of Origin ("MCO"), implying that the vehicle required an additional body installation. Plaintiff objected, clarifying that he purchased the truck solely as a chassis-cab for towing and not for any "second-stage" modification.

29.    Further, Plaintiff was never notified or advised in writing or otherwise that he would need to install a body and provide Rt1 with second-stage MCO.

30.    Rt1 has never disclosed or notified Plaintiff that the vehicle was incomplete and that Plaintiff would need to obtain second-stage MCO.

31.    Now Sal advised Plaintiff to obtain the form from an enhanced vehicle inspection station authorized by the Pennsylvania Department of Transportation ("PennDOT"), which licenses and regulates such stations.

32.    Plaintiff then contacted more than twenty (20) PennDOT-authorized inspection facilities across Pennsylvania, each of which informed him that a title or certificate of origin was required before any inspection could occur. 75 Pa. Stat. and Cons. Stat. Ann. § 1301 (C.2) (West) and 67 Pa. Code § 175.220(a)(1).

33.    Plaintiff relayed this information to Rt1 and requested the necessary ownership documents such as a valid Pennsylvania title or a Certificate of Origin.

34.    Rt1 ignored his messages and refused to provide the certificate of origin, title, or registration materials necessary to title and register the truck.

35.    Pennsylvania allows certain farm vehicles to be exempt from registration.

36.    The vehicle purchased by Plaintiff from Rt1 can either be registered as a farm vehicle or  qualifies to be exempt from registration as a farm a vehicle.

37.    Owners of vehicles seeking exemption from registration are required to submit an application to PennDOT and pay a fee and would receive an exemption sticker to operate the truck with substantial time and mileage limitations. See 75 Pa. Stat. and Cons. Stat. Ann. § 1302 (West).

38.    Seeking registration exemption to use the farm vehicle in compliance with Pennsylvania law, Plaintiff visited PA Title and Tag of Emmaus ("PATT"), a PennDOT-authorized service center, to apply for a farm-use registration exemption.

39.    At PATT, Plaintiff was informed that the truck's VIN did not appear in the PennDOT system as owned by Plaintiff, indicating that Rt1 never transferred title.

40.    PATT contacted Rt1 directly, speaking with both Sal and Salmanowitz, and confirmed that the original certificate of title or Manufacturer Certificate of Origin was required for registration or exemption processing.

41.    Rt1's representatives indicated that they would not comply or produce the required documents.

42.    As a result, PennDOT, acting under its statutory authority to regulate title issuance and registration, refused to recognize Plaintiff's ownership of the vehicle. To date, no Pennsylvania title, registration, or farm exemption sticker has been issued, rendering the truck unusable for any intended agricultural or commercial purpose.

**COUNT I**
**VIOLATION OF THE TAKINGS CLAUSE U.S. CONSTITUTION**
**PLAINTIFF V. PENNDOT**

43.     Plaintiff realleges and incorporates by reference the foregoing paragraphs.

44.     The Takings Clause of the Fifth Amendment of U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation."

45.     Through the Fourteenth Amendment's Due Process Clause, this prohibition applies to actions of the states and their officials.

46.     Commonwealth of Pennsylvania requires a proof of ownership such as the original title or "[f]or the purpose of this subchapter, ownership and legality shall be proven by a vehicle registration card, certificate of title or manufacturer's statement of origin"[1] 67 Pa. Code § 175.220.

47.     Under Commonwealth law farm vehicles are allowed to be exempt from registration with substantial use limitations. 75 Pa. Stat. and Cons. Stat. Ann. § 1301(c)(1) (West).

48.     By allowing and enforcing administrative procedures that deny vehicle ownership recognition absent the manufacturer's certificate of origin or title, despite full payment, delivery, and possession, without providing a mechanism for relief or compensation, the Defendant has effectively deprived Plaintiff of the use, value, and economic utility of his lawfully purchased vehicle.

---

[1] "Verify ownership, legality and proof of financial responsibility. For the purpose of this subchapter, ownership and legality shall be proven by a vehicle registration card, certificate of title or manufacturer's statement of origin." 67 Pa. Code § 175.220(a)(1).

49.     By allowing and enforcing administrative procedures that deny vehicle registration exemption for farm use under 75 Pa. Stat. and Cons. Stat. Ann. § 1301(c)(1) (West) absent the manufacturer's certificate of origin or title, despite full payment, delivery, and possession, without providing a mechanism for relief or compensation, the Defendant has effectively deprived Plaintiff of the use, value, and economic utility of his lawfully purchased vehicle.

50.     The Defendant's actions and omissions, under color of state law, constitute a regulatory taking of Plaintiff's property without just compensation in violation of the Fifth Amendment, and the lack of any adequate administrative remedy further violates the Fourteenth Amendment's Due Process Clause.

51.     The Statute and regulations deprive Plaintiff of ability to submit the vehicle for inspection or exempt the vehicle from registration requirement for farm use.

52.     The deprivation bears no reasonable relation to a legitimate state interest sufficient to justify the confiscation of Plaintiff's property rights.

53.     Defendant's actions constitute an unlawful taking of Plaintiff's property for public use without just compensation and without due process of law.

54.     Plaintiff has suffered economic harm, loss of property rights, and deprivation of constitutional protections as a result of Defendant's conduct

WHEREFORE, Plaintiff respectfully requests that this Court: declares that Defendant's actions violated the Takings Clause of the Fifth Amendment as applied through the Fourteenth Amendment; issues a permanent injunction prohibiting Defendant from enforcing the policy or action that caused the taking as related to 75 Pa. Stat. and Cons. Stat. Ann. § 1302 (West) and 67

Pa. Code § 175.220 provides just compensation to Plaintiff for the taking of property. Award Plaintiff costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; grants such other and further relief as the Court deems just and proper.

## COUNT II
## 67 PA. CODE § 175.220 VIOLATES COMMERCE CLAUSE
### PLAINTIFF V. PENNDOT

55.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

56.    67 Pa. Code § 175.220 discriminates against Pennsylvania purchasers engaged in interstate vehicle transactions, particularly those involving financing, in violation of the Dormant Commerce Clause.

57.    The regulation allows in-state dealers to use a Manufacturer's Certificate of Origin (MCO) for in-state registrations while preventing out-of-state dealers from doing the same when the purchaser is a Pennsylvania resident.

58.    Because financed vehicles carry a lien and therefore cannot provide a "clean title" at the time of purchase, Pennsylvania buyers are effectively barred from completing registration through out-of-state dealers.

59.    This differential treatment benefits in-state dealers—who can deliver vehicles and process registrations using the MCO despite financing—while burdening out-of-state competitors and the Pennsylvania consumers who wish to purchase from them.

60.    As such, § 175.220 constitutes a form of economic protectionism that imposes a discriminatory barrier to interstate commerce, rendering it virtually per se invalid.

61.    § 175.220 discriminates against interstate commerce because it provides for differential treatment of Pennsylvania purchases of incomplete vehicles and out-of-state purchases of incomplete vehicles; it benefits the former and burdens the latter. *Hughes v. Oklahoma*, 441 U.S. 322, 325–26, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979).

62.    The burden imposed by the statute on interstate commerce is clearly excessive in relation to the putative local benefits. *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 499–500 (5th Cir. 2001).

WHEREFORE, Plaintiff respectfully requests that this Court: declares that Defendant's actions violated the Commerce Clause; issues a permanent injunction prohibiting Defendant from enforcing the policy or action that caused discriminating out-of-state purchases by the Commonwealth residents. Award Plaintiff costs and reasonable attorney's fees; grants such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY
## AND FITNESS FOR A PARTICULAR PURPOSE
## PLAINTIFF V. RT1

63.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64.    On or about July 31, 2025, Plaintiff Shomron and Defendant Rt1 entered into a valid, binding, and enforceable contract for the purchase/sale of a 2023 RAM 3500 cabin chassis truck for an agreed total price of $54,999 "out-of-the-door," inclusive of all registration fees, sales tax, documentation fees, and other costs.

65.     The agreement was formed in New Jersey and governed by the New Jersey

Uniform Commercial Code (U.C.C.), N.J.S.A. 12A:2-101 et seq., and other applicable statutes

governing the sale and titling of motor vehicles, including N.J.S.A. 39:10-1 et seq.

66.     Under the terms of the parties' agreement, Rt1 expressly and/or impliedly

undertook to (a) transfer good and marketable title to the vehicle to Plaintiff; (b) provide and/or

submit all documentation necessary to register the vehicle as a farm vehicle in Pennsylvania; (c)

collect and remit applicable sales tax and registration fees to the proper authorities to effectuate

lawful registration; and (d) deliver a vehicle capable of lawful operation under Pennsylvania law

and subject to Shomron's requirements to maximize towing capacity.

67.     Plaintiff fully performed his contractual obligations by executing the purchase

agreement, providing all required personal and farm-use documentation (including driver's

license, insurance, weight designation, and IRS Schedule F), and tendering payment in full

through financing approved by Chrysler Capital.

68.     On or about August 8, 2025, Rt1 delivered the vehicle to Plaintiff's farm in

Coopersburg, Pennsylvania, bearing temporary New Jersey tags valid for thirty (30) days.

69.     Pursuant to the contract and applicable law, Rt1 was required to promptly:

transfer title or MCO to Plaintiff, remit collected sales tax to the appropriate agency and file the

documentation necessary for Pennsylvania title and registration as farm vehicle. Rt1 was

obligated to perform other duties necessary to register vehicle in the Commonwealth.

70.     Instead, Rt1 failed and refused to complete those obligations. Despite repeated

requests by Plaintiff, Rt1 did not transfer title, did not remit sales tax or registration fees to the

Commonwealth of Pennsylvania, and did not provide the Manufacturer's Certificate of Origin or title documentation.

71.    As a direct result, Plaintiff has been unable to submit the vehicle for inspection, register, title, or lawfully operate the vehicle in Pennsylvania. The truck remains unusable for any intended purpose which renders it worthless to Plaintiff.

72.    Under New Jersey law, including N.J.S.A. 12A:2-301 and 12A:2-503, 12A:2-503a seller must tender delivery conforming to the contract, including all documents necessary to enable the buyer to obtain lawful possession and use of the goods. Failure to provide a valid certificate of ownership or registration documents constitutes a material breach of the sales contract.

73.    Rt1's conduct also violates its statutory duty under N.J.S.A. 39:10-5 and 39:10-9, which require dealers to promptly execute and deliver to the buyer proper assignments of the manufacturer's certificate of origin or title and to remit taxes and fees collected for registration.

74.    Rt1's failure to perform its contractual and statutory obligations constitutes a material breach of the parties' agreement.

75.    Plaintiff has satisfied all conditions precedent, and any remaining conditions have been waived, excused, or rendered impossible by Rt1's breach.

76.    As a direct and proximate result of Rt1's breach, Plaintiff has suffered damages including, but not limited to: loss of use of the vehicle; continuing finance charges and insurance premiums for a vehicle he cannot lawfully operate; expenses and lost income related to the inability to use the vehicle; and any additional consequential and incidental damages recoverable under N.J.S.A. 12A:2-715 or other applicable law.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

### COUNT IV
### BREACH OF CONTRACT
### PLAINTIFF V. RT1

77.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78.     At all relevant times, Rt1was a merchant engaged in the business of selling new and used motor vehicles within the meaning of N.J.S.A. 12A:2-104(1) and 12A:2-314(1).

79.     On or about July 31, 2025, Plaintiff Shomron entered into a valid and enforceable contract with Rt1 for the purchase of a 2023 RAM 3500 cabin chassis truck.

80.     As a part of that sale, Rt1 impliedly warranted that the vehicle was merchantable, fit for ordinary purposes for which such goods are used, and would pass without objection in the trade under the contract description, as required by N.J.S.A. 12A:2-314(2).

81.     Rt1 also impliedly warranted that the vehicle would be fit for the particular purpose made known to the seller by the buyer at the time of contracting, namely, that it would be titled and registered in Pennsylvania as a farm vehicle for use in towing gooseneck trailers under N.J.S.A. 12A:2-315.

82.    Plaintiff explicitly informed Rt1, through its sales representative Steve Salmanowitz, that the truck would be used on a Pennsylvania farm and required farm-use registration at a gross vehicle weight of 26,000 lbs.

83.    Rt1 represented that it was experienced in selling and registering vehicles for Pennsylvania residents, that it would collect and remit registration fees and tax, and that it would complete all necessary paperwork to enable Plaintiff to lawfully operate the vehicle in Pennsylvania.

84.    Plaintiff reasonably relied upon Rt1's skill, experience, and representations in selecting and purchasing the vehicle for the particular purpose described.

85.    After accepting payment and delivering the truck with temporary New Jersey tags, Rt1 failed to: (a) provide or transfer MCO or certificate of title; (b) register or remit taxes and fees necessary for Pennsylvania title issuance; and (c) enable Plaintiff to obtain registration, inspection, or farm-use exemption through PennDOT.

86.    As a result, Plaintiff has been unable to lawfully operate, register, insure, or utilize the truck in any manner consistent with its ordinary or particular intended purpose.

87.    A motor vehicle that cannot be registered, titled, or legally operated is not fit for its ordinary purpose, and therefore fails to meet the implied warranty of merchantability under N.J.S.A. 12A:2-314(2)(c) and (f).

88.    Likewise, because the vehicle cannot be registered as a farm truck or used for towing and agricultural operations as Rt1 knew Plaintiff intended, it fails the implied warranty of fitness for a particular purpose under N.J.S.A. 12A:2-315.

89.    Any attempted disclaimers of implied warranties are ineffective and unenforceable because Plaintiff expressly did not sign the arbitration or warranty-disclaimer

provisions of the purchase agreement, and the remaining documentation did not meet the conspicuous-writing requirements of N.J.S.A. 12A:2-316(2).

90.    Plaintiff has satisfied all conditions precedent to bringing this claim, or such conditions have been waived or excused by Defendant's conduct.

91.    As a direct and proximate result of Rt1's breaches of the implied warranties of merchantability and fitness for particular purpose, Plaintiff has sustained substantial damages, including but not limited to: loss of use and enjoyment of the vehicle; continuing finance and insurance costs for an inoperable vehicle; lost productivity and income from inability to use the vehicle for farming operations; and consequential and incidental damages recoverable under N.J.S.A. 12A:2-715.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

**COUNT V**
**FRAUD**
**PLAINTIFF V. RT1**

92.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

93.    On or about July 31, 2025, Plaintiff Shomron purchased a 2023 RAM 3500 cabin chassis truck to be titled and registered in Pennsylvania for use as a farm vehicle.

94.     During negotiations, Rt1 made false material representations of facts to Plaintiff, including but not limited to: (a) that Rt1 would collect and remit sales tax and registration fees to the Commonwealth of Pennsylvania; (b) that Rt1 would complete all necessary paperwork and register the vehicle in Pennsylvania on Plaintiff's behalf; (c) that Rt1 was experienced and fully capable of handling Pennsylvania registrations and had recently completed similar transactions for other PA residents; and (d) that the transaction price of $54,999 "out-of-the-door" included all fees, taxes, and documentation costs required for lawful ownership and registration.

95.     These representations were false when made, and Rt1 knew or should have known they were false. At the time of contracting, Rt1 had no intent to remit the collected taxes or registration fees, transfer title, or deliver the necessary ownership documents to Plaintiff.

96.     In addition, Rt1 concealed or omitted material facts, including that the dealership would later claim the truck required a second-stage MCO or additional inspection—conditions not disclosed or agreed upon at the time of sale.

97.     Rt1 made these misrepresentations and omissions intentionally and willfully, with the purpose of inducing Plaintiff to enter into the purchase agreement, deliver payment, and rely on Rt1 to process all necessary registration and ownership documents.

98.     Plaintiff reasonably and justifiably relied on these representations, as Rt1 held itself out as a reputable dealership with knowledge and experience in handling inter-state transactions and Pennsylvania farm-vehicle registrations.

99.     Plaintiff executed the purchase agreement, provided all requested documents (including proof of insurance, IRS Schedule F, and weight-designation forms), and tendered payment in full in reliance on Rt1's assurances.

100.    After taking Plaintiff's money and delivering the vehicle, Rt1 failed to perform any of the promised registration, tax, or title-transfer functions. Despite repeated inquiries by Plaintiff, Rt1 refused to provide documentation, ignored communications, and falsely claimed that additional paperwork or inspections were required.

101.    Rt1's fraudulent misrepresentations and omissions deprived Plaintiff of legal ownership and the ability to use, insure, or register the vehicle that was not legal to be sold in the Commonwealth, effectively leaving him with a truck that cannot be operated or titled under Pennsylvania law.

102.    As a result of Rt1's fraud, Plaintiff has sustained substantial damages, including but not limited to: (a) loss of use and enjoyment of the purchased vehicle; (b) payment of the purchase price without receiving legal title or registration; (c) financing and insurance costs for a vehicle that cannot be used; (d) lost income and operational losses tied to the inability to use the vehicle for farming; and (e) emotional distress and time lost attempting to resolve the issue.

103.    Rt1's conduct constitutes fraud in the inducement and fraudulent misrepresentation under New Jersey common law, as Rt1 knowingly made false statements of material facts and concealed essential information with the intent that Plaintiff rely on them to his detriment.

104.    The wrongful acts of Rt1 were malicious, intentional, and in reckless disregard of Plaintiff's rights, warranting the imposition of punitive damages under New Jersey law.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to

Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

**COUNT VI**
**<u>UNJUST ENRICHMENT</u>**
**PLAINTIFF V. RT1**

105.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106.    Plaintiff Shomron entered into an enforceable agreement with Rt1.

107.    Plaintiff paid Rt1 in full for the vehicle, including sums specifically designated for sales tax, title, and registration to be remitted to the Commonwealth of Pennsylvania in order to secure lawful registration of the vehicle.

108.    Rt1 accepted and retained those payments and proceeded to deliver the vehicle to Plaintiff in Coopersburg, Pennsylvania, on August 8, 2025, with temporary New Jersey tags valid for only thirty (30) days.

109.    Despite accepting full payment, Rt1 failed and refused to provide the required ownership documentation, specifically MCO or properly executed title—and failed to remit the collected sales tax and registration fees to the appropriate governmental authorities.

110.    As a result of Rt1's failure to act, Plaintiff was unable to obtain title, registration, or lawful use of the vehicle and has derived no benefit from the payment made to Rt1.

111.    Rt1, by contrast, has been unjustly enriched by retaining the full purchase price and related fees, while failing to transfer ownership, provide valid documentation, or deliver the agreed-upon benefit of lawful vehicle registration.

112.    The enrichment of Rt1 and corresponding impoverishment of Plaintiff occurred under circumstances that make it unjust for Rt1 to retain the benefit without restitution.

113.    Equity and good conscience require that Rt1 disgorge and return the value of the benefit conferred by Plaintiff, including the purchase price, fees, and taxes retained by Rt1 and other expenses incurred by Plaintiff.

114.    Plaintiff has no adequate remedy at law for Rt1's unjust enrichment, as Defendant's actions have deprived Plaintiff of both the property's use and the funds paid for its acquisition.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

**COUNT VII**
**CONVERSION**
**PLAINTIFF V. RT1**

115.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116.    On or about July 31, 2025, Plaintiff Shomron entered into a valid and binding purchase agreement with Rt1.

117.    Plaintiff paid Rt1 in full for the vehicle, including all amounts collected for sales tax, title, and registration fees to be remitted to the appropriate governmental authorities to effectuate Pennsylvania title and registration.

118.    On August 8, 2025, Rt1 delivered the vehicle to Plaintiff's farm in Coopersburg, Pennsylvania, bearing temporary New Jersey registration tags valid for thirty (30) days.

119.    Although Plaintiff lawfully acquired possession of the vehicle, Rt1 retained and continues to retain exclusive control over MCO and related ownership documents necessary to establish and perfect Plaintiff's legal title.

120.    Under N.J.S.A. 39:10-5 and 39:10-9, a dealer who sells a new vehicle must execute and deliver to the purchaser a properly assigned MCO or certificate of title. Failure to do so deprives the purchaser of ownership and constitutes unlawful retention of property.

121.    Despite repeated requests and demands from Plaintiff between August and October 2025, Rt1 has refused to deliver MCO, title, or proof of tax remittance, and has instead misrepresented that further inspections or "second-stage" documentation were required.

122.    By withholding these essential ownership documents, Rt1 has wrongfully exercised dominion and control over property belonging to Plaintiff—specifically, (a) the MCO and corresponding ownership rights in the truck, and (b) the sales tax and registration fees paid for the purpose of titling the vehicle.

123.    Plaintiff has at all relevant times been the rightful owner of the vehicle and the funds paid to Rt1 for taxes and fees. Rt1's continued refusal to surrender the ownership

documents and remit the collected taxes constitutes a serious interference with Plaintiff's possessory and ownership rights.

124. Rt1's conduct constitutes conversion under New Jersey law, defined as the intentional exercise of dominion or control over another's property inconsistent with the owner's rights. *Mueller v. Technical Devices Corp.*, 8 N.J. 201, 207 (1951).

125. As a direct and proximate result of Rt1's conversion, Plaintiff has suffered damages, including but not limited to: (a) loss of legal ownership and title to the vehicle; (b) inability to lawfully register, insure, or use the truck for its intended purpose; (c) continuing financial obligations on a vehicle that cannot be operated; (d) loss of income and operational efficiency; and (e) additional consequential and incidental losses caused by Rt1's wrongful retention of property.

126. Rt1's acts were willful, wanton, and in reckless disregard of Plaintiff's property rights, warranting the imposition of punitive damages to punish and deter such misconduct.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

**COUNT VIII**
**<u>NEGLIGENT MISREPRESENTATION</u>**
**PLAINTIFF V. RT1**

127.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

128.    On or about July 31, 2025, Plaintiff Shomron purchased a 2023 RAM 3500 cabin chassis truck, to be titled and registered in Pennsylvania as a farm vehicle.

129.    During negotiations, Rt1, through its agents and employees, including sales manager Sal and sales representative Steve Salmanowitz made a series of representations to Plaintiff regarding the nature, handling, and registration of the vehicle, including that: (a) Rt1 would collect and remit all necessary sales tax and registration fees to the Commonwealth of Pennsylvania; (b) Rt1 would prepare and submit all paperwork to secure Pennsylvania title and registration on Plaintiff's behalf; (c) Rt1 was experienced in selling and registering vehicles for Pennsylvania residents; and (d) the total "out-of-the-door" purchase price of $54,999 included all taxes, fees, and documentation necessary to lawfully operate the vehicle.

130.    These representations were material to the transaction and were made by Rt1 in the ordinary course of its business as a licensed vehicle dealer.

131.    At the time these statements were made, Rt1 and its employees failed to exercise reasonable care or competence in obtaining or communicating accurate information regarding the requirements for interstate title transfer and farm-vehicle registration in Pennsylvania.

132.    Specifically, Rt1 knew or should have known that: (a) the vehicle is not legal for sale in the Commonwealth of Pennsylvania in present condition; (b) the vehicle was incomplete and required substantial modification for registration; (c) a vehicle cannot be registered or titled in Pennsylvania without the proper MCO or duly assigned title; (d) a vehicle is subject to enhanced inspection procedure in Pennsylvania and had to provide documents including MCO

for the purchaser of this type of vehicle; (e) installation of the required equipment is burdensome, inconvenient and expensive; and (f) a dealer is legally required under N.J.S.A. 39:10-5 and 39:10-9 to execute and deliver MCO or title to the buyer upon sale of a new vehicle.

133.    Rt1 negligently failed to ensure compliance with these laws and failed to provide the essential documents or remit the collected fees and taxes necessary to register the vehicle.

134.    Plaintiff reasonably relied on Rt1's representations in entering the transaction, executing the purchase agreement, and tendering full payment. Plaintiff also provided all documentation requested by Rt1, including proof of insurance, driver's license, weight-designation forms, and IRS Schedule F.

135.    Plaintiff's reliance was justifiable and foreseeable, as Rt1 held itself out as a knowledgeable, experienced dealer that regularly conducts transactions involving Commonwealth of Pennsylvania registrations.

136.    After accepting full payment, Rt1 failed to register the vehicle, remit taxes, or transfer title to Plaintiff or reasonably cooperate with Plaintiff.

137.    Rt1 subsequently misinformed Plaintiff that an "Application for Correction of Vehicle Data" (Form MV-45) and a "second-stage Manufacturer's Certificate of Origin" were needed, further delaying and complicating the transaction.

138.    As a direct and proximate result of Rt1's negligent misrepresentations and omissions, Plaintiff suffered significant harm, including but not limited to: (a) loss of use and enjoyment of the vehicle; (b) continuing financial obligations on a vehicle that cannot be lawfully operated; (c) costs of insurance, storage, and alternative transportation; (d) lost income and operational disruptions; and (e) time and expense spent attempting to correct Rt1's failures.

139.   Rt1's negligent conduct constitutes negligent misrepresentation under New Jersey law, which holds liable any party who, in the course of business, provides false information for the guidance of others in business transactions when they fail to exercise reasonable care in obtaining or communicating that information (*H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983)).

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

## COUNT IX
## NEW JERSEY CONSUMER FRAUD ACT (NJCFA)
## PLAINTIFF V. RT1

140.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

141.   The transaction at issue, the sale of a 2023 RAM 3500 cabin chassis truck, constitutes the sale of merchandise within the meaning of N.J.S.A. 56:8-2, as it involved the sale of goods to a consumer for personal, agricultural, or business use.

142.   On or about July 31, 2025, Plaintiff Shomron and Rt1 entered into a purchase agreement under which Rt1 agreed to: (a) sell and deliver the above-described vehicle; (b) collect and remit all applicable taxes and registration fees to the Commonwealth of Pennsylvania; (c) prepare and submit all documents necessary for registration and titling; and (d)

deliver clear title and documentation to enable Plaintiff to lawfully register and operate the vehicle.

143.   In connection with this transaction, Rt1, through its employees and representatives Sal and Steve Salmanowitz, engaged in false, misleading, and unconscionable commercial practices, including but not limited to: (a) representing that Rt1 would complete all title, registration, and tax filings with Pennsylvania authorities; (b) representing that the total "out-of-the-door" price included all necessary registration and documentation costs; (c) failing to disclose that Rt1 would not transfer MCO or title; Failing to disclose that the vehicle was incomplete and was not legal for sale in Pennsylvania without a substantial modification or comprehensive inspection; (d) failing to remit sales tax and registration fees collected from Plaintiff to the appropriate authorities; and (e) delivering the vehicle with temporary New Jersey tags while retaining ownership documentation and preventing registration in Pennsylvania.

144.   These misrepresentations and omissions constitute "unlawful practices" under N.J.S.A. 56:8-2, including:

145.   The use or employment of deception, fraud, false pretense, false promise, or misrepresentation; and

146.   The knowing concealment, suppression, or omission of material facts with intent that others rely on such concealment.

147.   Rt1's conduct also constitutes an unconscionable commercial practice, as it intentionally collected and retained Plaintiff's payment, taxes, and fees while failing to deliver title or provide the promised registration services, thereby depriving Plaintiff of lawful ownership and use of the vehicle.

148.    At all times, Plaintiff reasonably relied upon Rt1's representations and omissions in agreeing to purchase the vehicle, paying the full price, and providing personal and financial documentation.

149.    As a direct and proximate result of Rt1's unlawful practices, Plaintiff suffered ascertainable losses within the meaning of N.J.S.A. 56:8-19, including but not limited to:

150.    Payment of the full purchase price without receipt of valid title or registration;

151.    Loss of use, enjoyment, and value of the vehicle;

152.    Continuing finance and insurance costs for a vehicle that cannot be lawfully operated;

153.    Out-of-pocket costs, time, and expenses attempting to correct Rt1's failures; and

154.    Lost income associated with inability to use the vehicle for its intended purposes.

155.    Rt1's acts and omissions were intentional and knowing, demonstrating a pattern of deceptive conduct toward out-of-state consumers purchasing vehicles for registration elsewhere.

156.    Pursuant to N.J.S.A. 56:8-19, a prevailing plaintiff under the NJCFA is entitled to treble damages, attorney's fees, filing fees, and costs of suit.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

**COUNT X**
**NEW JERSEY MOTOR VEHICLE CERTIFICATE OF OWNERSHIP**
**PLAINTIFF V. RT1**

157.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

158.    The New Jersey Motor Vehicle Certificate of Ownership Act (*the "Act"*), *N.J.S.A. 39:10-1 et seq.*, regulates the issuance, assignment, and delivery of certificates of ownership (title) and MCOs for motor vehicles sold in New Jersey.

159.    Under N.J.S.A. 39:10-5, when a manufacturer delivers a new motor vehicle to a dealer for resale, it must provide a Manufacturer's Certificate of Origin describing the vehicle.

160.    Under N.J.S.A. 39:10-9, a licensed dealer that sells a new motor vehicle must execute and deliver to the purchaser a properly assigned MCO or certificate of title, together with any forms or applications necessary for the purchaser to obtain registration and lawful ownership.

161.    Rt1 collected from Plaintiff the purchase price, sales tax, and registration fees, and expressly represented that it would: (a) prepare and submit all documentation required for Pennsylvania title and registration; (b) transfer ownership of the vehicle to Plaintiff; and (c) remit all fees and taxes to the appropriate authorities.

162.    On August 8, 2025, Rt1 delivered the truck to Plaintiff in Coopersburg, Pennsylvania, bearing temporary New Jersey tags valid for thirty (30) days, but failed to deliver or execute the MCO or any certificate of title as required by Act.

163.    After repeated inquiries by Plaintiff throughout August and September 2025, Rt1 refused and/or neglected to: (a) deliver MCO; (b) transfer title to Plaintiff; or (c) remit the sales tax and registration fees it collected.

164.    Rt1's failure to execute and deliver MCO or certificate of title violates N.J.S.A. 39:10-9, which imposes a mandatory duty on motor-vehicle dealers to provide purchasers with evidence of ownership enabling registration and lawful operation.

165.    Rt1's actions further contravene N.J.S.A. 39:10-20, which prohibits any person from selling or transferring a motor vehicle without delivering a properly assigned certificate of ownership or MCO.

166.    As a result of these statutory violations, Plaintiff has been deprived of legal title, registration, and lawful use of the purchased vehicle and has incurred significant losses, including but not limited to: (a) the inability to register or operate the vehicle in Pennsylvania; (b) continuing finance and insurance expenses; (c) loss of use and associated income from the vehicle's intended purposes; and (d) time and expenses incurred to correct Rt1's statutory noncompliance.

167.    Rt1's violation of the Act also constitutes negligence per se and an unlawful practice within the definition of Act, reinforcing its liability for statutory damages and attorney's fees.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

**COUNT XI**
**<u>BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING</u>**
**PLAINTIFF V. RT1**

168.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

169.   Plaintiff fully performed his contractual obligations by executing the purchase agreement, providing all documentation requested by Rt1 (including proof of insurance, IRS Schedule F, and weight-designation forms), and tendering full payment through financing arranged via Chrysler Capital.

170.   Under the terms of the contract and the New Jersey Uniform Commercial Code, Rt1 was required to: (a) Transfer good and marketable title to Plaintiff; (b) Remit sales tax and registration fees to the appropriate governmental authorities; and (c) Provide MCO or other ownership documents necessary for registration in Pennsylvania.

171.   The implied covenant of good faith and fair dealing is inherent in every contract under New Jersey law. It requires that parties act in good faith and don't infringe on or injure the right of the other party to receive the fruits of the agreement. *See, e.g., Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997); *Wilson v. Amerada Hess Corp.*, 168 N.J. 236 (2001).

172.   Rt1's conduct following the sale was arbitrary, opportunistic, and in bad faith, and thereby violated the implied covenant of good faith and fair dealing, including but not limited to the following acts: (a) retaining the MCO and refusing to transfer title to Plaintiff; (b) failing to remit sales tax and registration fees to the appropriate authorities; (c) providing false assurances that registration was being processed while knowing that no such submission had occurred; (d) imposing additional unreasonable requirements that were not stipulated or agreed upon at the time of sale (e.g., second-stage MCO, "Application for Correction of Vehicle Data") to delay or avoid performance; and (e) ignoring Plaintiff's repeated communications and failing to cure the deficiencies after being notified.

173.   These actions were undertaken in bad faith and were designed to avoid Rt1's contractual obligations while retaining the full benefit of Plaintiff's payment.

174.   Rt1's refusal to provide the documentation necessary for lawful ownership deprived Plaintiff of the essential benefit of the contract, a fully transferable, registrable, and usable vehicle, and thus constitutes a breach of the implied covenant of good faith and fair dealing.

175.   As a direct and proximate result of Rt1's bad-faith conduct, Plaintiff suffered substantial damages, including but not limited to: (a) loss of use, enjoyment, and possession of the vehicle; (b) financial losses from ongoing payments, insurance, and storage costs; (c) lost income from the inability to use the truck for intended purposes; and (d) time and expense incurred attempting to rectify Rt1's bad-faith conduct.

176.   Rt1's actions were intentional, malicious, and in reckless disregard of Plaintiff's contractual rights, warranting the imposition of punitive damages under New Jersey law.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Rt1, and awards the following equitable relief, an order requiring restitution of all funds paid by Plaintiff, including purchase price, taxes, fees, and other transaction-related expenses, disgorgement of all profits or benefits unjustly retained by Rt1, return of the truck to Rt1, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

**COUNT XII**
**<u>FRAUD</u>**
**PLAINTIFF V. JOHN DOE**

177.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

178.    At all relevant times, Defendant John Doe (real name unknown to Plaintiff at this time) was an employee, agent, and/or manager of Rt1 acting within the course and scope of his employment and with apparent authority to negotiate, execute, and manage vehicle sales.

179.    On or about July 31, 2025, Defendant John Doe was personally involved in and responsible for negotiating and facilitating the sale of a 2023 RAM 3500 cabin chassis truck.

180.    During the negotiation and execution of the transaction, John Doe knowingly made false and material representations to Plaintiff, including but not limited to: (a) That Rt1 would collect and remit all necessary sales tax and registration fees to the Commonwealth of Pennsylvania; (b) That Rt1 would complete all paperwork and handle registration of the vehicle on Plaintiff's behalf; concealed without justification that the purchased truck was not a complete vehicle and was not legal to register in Pennsylvania without expensive and burdensome modifications and enhanced inspections; (c) That Rt1 was experienced in performing such

transactions for Pennsylvania customers and would ensure the vehicle was properly titled and registered; and (d) That the transaction was fully compliant with Pennsylvania's registration requirements.

181.    Defendant John Doe further represented that Rt1 would deliver a complete and lawful sale, including transfer of title or MCO, and that all taxes and fees collected were properly accounted for.

182.    These representations were false when made, and Defendant knew or recklessly disregarded their falsity.

183.    Specifically, John Doe knew or should have known that: (a) that the purchased truck was not a complete vehicle and was not legal to register in Pennsylvania; the buyer would need to engage in expensive and burdensome modifications and submit the vehicle for enhanced inspections; (b) Rt1 did not intend to transfer or provide MCO or title to Plaintiff; and (c) the vehicle could not lawfully be registered in Pennsylvania without those documents.

184.    Defendant John Doe also concealed or omitted material facts, including that: (a) the purchased truck was not a complete vehicle and was not legal to register in Pennsylvania; the buyer would need to engage in expensive and burdensome modifications and submit the vehicle for enhanced inspections; (b) Rt1 would fail to process any title transfer; would not register the vehicle on Plaintiff's behalf and (c) Plaintiff would be unable to legally operate or register the vehicle in Pennsylvania once the temporary tags expired.

185.    Defendant John Doe made these misrepresentations and omissions intentionally, willfully, and with the purpose of inducing Plaintiff to: (a) enter into the purchase agreement; (b) tender full payment for the vehicle; and (c) rely on Rt1's and his assurances that all registration obligations would be fulfilled.

186.    Plaintiff reasonably and justifiably relied on John Doe's misrepresentations in purchasing the vehicle, providing all required documentation, and paying the agreed price, including registration and tax fees.

187.    After delivery of the vehicle with temporary New Jersey tags, Defendant John Doe and other Rt1 representatives ignored Plaintiff's repeated requests for title and registration confirmation, and continued to make false assurances such as "I will check" and despite knowing the documentation was never processed.

188.    Defendant John Doe's fraudulent conduct caused Plaintiff to suffer substantial damages, including but not limited to: (a) payment of the full purchase price without receiving title or registration; (b) loss of lawful ownership and use of the vehicle; (c) continuing financial obligations for loan payments and insurance; (d) lost income and operational disruptions from the inability to use the truck for its intended purpose; and (e) expenses and time incurred attempting to resolve the fraudulent transaction.

189.    Defendant John Doe's actions constitute fraud and fraudulent misrepresentation under New Jersey common law. *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610, 691 A.2d 350, 367–68 (1997) citing *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619 (1981).

190.    Defendant's acts were intentional, malicious, and in willful disregard of Plaintiff's rights, warranting an award of punitive damages to deter similar misconduct.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant John Doe, and awards actual and consequential damages, attorney fees, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

## COUNT XII

## NEGLIGENT REPRESENTATION

### PLAINTIFF V. JOHN DOE

*(New Jersey Common Law)*

191.    Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

192.    In the ordinary course of his business, John Doe made material representations to Plaintiff regarding the sale and post-sale processing of a 2023 RAM 3500 cabin chassis, including that: (a) Rt1 would collect and remit all necessary Pennsylvania sales tax and registration fees; (b) Rt1 would prepare, submit, and complete all paperwork to obtain Pennsylvania title/registration (or farm-use exemption); (c) Rt1 would deliver ownership documents (MCO or properly assigned title) necessary for Pennsylvania registration; (d) Rt1 was experienced and competent to complete these steps for Pennsylvania customers; and (e) the vehicle was legal for sale in Pennsylvania and can be registered in Pennsylvania in its current state.

193.    John Doe owed Plaintiff a duty to exercise reasonable care and competence in obtaining and communicating such information for Plaintiff's guidance in the transaction. Restatement (Second) of Torts § 552; *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 179 N.J. 500, 504, 846 A.2d 1237, 1240 (2004) citing *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324 (1983); *Petrillo v. Bachenberg*, 139 N.J. 472 (1995).

194.    John Doe breached that duty by failing to exercise reasonable care in determining the truth and accuracy of the information provided, including by: (a) Misstating that Rt1 would (and could) complete Pennsylvania titling/registration while failing to ensure that the required MCO/title and filings would be made; (b) intentionally Overlooking and disregarding legal

requirements that Pennsylvania will not title/register without MCO or assigned title and proper

tax remittance; (c) Assuring compliance despite Rt1's retention of MCO/title and failure to remit

collected taxes/fees; and (d) Providing post-sale assurances ("I will check," "everything is

good") without reasonable investigation into the status of the paperwork while the paperwork

was not submitted and the temporary tags expired.

195.    Plaintiff reasonably and foreseeably relied on John Doe's statements in entering

the transaction, signing the purchase documents, providing all requested proofs (driver's license,

insurance, IRS Schedule F, weight form), and tendering full payment inclusive of taxes/fees.

196.    But for John Doe's negligent misrepresentations and omissions, Plaintiff would

not have completed the purchase.

197.    As a direct and proximate result, Plaintiff suffered ascertainable losses, including:

(a) loss of use and enjoyment of the vehicle (inability to register/insure/operate in PA); (b)

ongoing finance, insurance, and storage costs for a vehicle that cannot be lawfully operated; (c)

out-of-pocket expenses and lost income tied to the intended uses; and (d) time and costs

attempting to rectify the documentation and registration failures.

198.    John Doe's conduct constitutes negligent misrepresentation under New Jersey law

(providing false information in the course of business for the guidance of others without

reasonable care, resulting in pecuniary loss through justifiable reliance).

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and

against Defendant John Doe, and awards actual and consequential damages, attorney fees,

prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's

fees as permitted by statutes or equity, punitive damages, and such other and further relief as the

Court deems just and proper.

## COUNT XIII

## NEGLIGENT REPRESENTATION

### PLAINTIFF V. CORPORATION1

*(New Jersey Common Law — Against Defendant Corporation1 Inspection Station)*

199.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

200.    On or about September 2025, Plaintiff Shomron contacted Corporation1 seeking to have his 2023 RAM 3500 cabin chassis truck inspected for purposes of registration as required by Pennsylvania law.

201.    During these communications, the Inspection Station's agents and employees made representations of material fact to Plaintiff, including that: (a) the vehicle could not be inspected without an existing Pennsylvania lien-free title; and (b) PA DOT prohibited inspection of any vehicle delivered without an original title;

These representations were made in the course of the Corporation1's business and for the purpose of guiding Plaintiff's actions regarding registration and compliance.

202.    Corporation1 and its employees owed a duty to exercise reasonable care and competence in obtaining and communicating such information to members of the public who reasonably rely upon their professional knowledge and regulatory authority.

203.    Relying on Corporation1's representations, Plaintiff was unable to complete registration or obtain his farm-use exemption sticker, resulting in the continued inability to lawfully operate or register the truck.

204.    Had Corporation1 exercised reasonable care or correctly informed Plaintiff of the actual inspection eligibility criteria, Plaintiff would have promptly obtained inspection and completed registration through lawful means.

205.    As a direct and proximate result of the Corporation1's negligent misrepresentations, Plaintiff suffered pecuniary and consequential losses, including: (a) loss of use and enjoyment of the vehicle; (b) continuing loan and insurance payments for an unregistered truck; (c) lost time, expense, and productivity related to the vehicle's intended operations; and (d) additional administrative costs incurred in attempting to correct the misinformation.

206.    Corporation1's conduct constitutes negligent misrepresentation under Pennsylvania law, providing false information for the guidance of others in business transactions without reasonable care, leading to foreseeable and justifiable reliance and resulting financial harm.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendant Corporation1, and awards actual and consequential damages, attorney fees, prejudgment and post-judgment interest as allowed by law including costs of suit and attorney's fees as permitted by statutes or equity, punitive damages, and such other and further relief as the Court deems just and proper.

Date: October 30, 2025

By:
/S/S.J.Litvak_____
S. JOSEPH LITVAK, ESQUIRE
PA Attorney No. 321937
Attorney for Plaintiff
3070 Bristol Pike
Building 1, 204
Bensalem, PA 19020
(215) 515.7113

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: November 3, 2025.

/S/S.J.Litvak_____

S. JOSEPH LITVAK, ESQUIRE

Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues.

Dated: November 3, 2025.

/S/S.J.Litvak_____
S. JOSEPH LITVAK, ESQUIRE
Attorney for Plaintiff